Moore, Justice
The possession of part of a tract, circumscribed by marked lines, is a possession of the whole tract within these lines. — If the defendants possessed the part mentioned in the evidence, claiming under Guthrie’s patent, the’r possession extends to the lines of. that patent and no further * but if they possessed this part claiming as far as the lines of the hundred acre tract, then their possession extends to the whole tract. A naked possession for seven year, without entry or claim, will bar the right of entry, of ail adverse claimants : And a possession, with colour of title for seven years, will giv e to the defendant in possession, and absolute right against all others forever.
Verdict and judgment for the defendant.
Note. — la this case a grant dated in 1663, was seen by Mr« Price, a witness, and it ran across the tract in dispute.
Note.- — This distinction between a.seven years naked possession, and a seven years possession with colour of title, (though the decision in.this case was proper for ether reasons)-is as I apprehend, founded upon a wrong construction of the act of limitations. It supposes the second section, intended to operate upon future cases in such manner as W> give a right to the defendant ; and that the third section, is intended to operate, by tolling the plaintiff’s entry, or taking away his right of possession, so as to-disable him to recover in ejectment without affecting the property or mere right, which he may recover in a writ of right, It will be attempted in. this place to be evinced, that such a construction is erroneous * and to be shewn what the genuine and true meaning and operation of the act is, it being oí very great Importance to the public, that this- act should- not he misunder,stood.
First, then, as to the second clause r It was passed In the year ÍT1S, prior'to which period, no- office for the registration of deeds and mesne conveyancs had been established, consequently bargains anti sales were not used in this country, for they were void unless enrolled within six months ; the act of 1H-15, ch. 3ST list established these offices: Fines and recoveries were n©t La *89 .irse ; that is declared in the preamble of the act of 1715, cb. 28; feoffments or livery and seizen are spoken of in the sixth section of 1715, ch. 38, as a mode of conveyance pi stetised in Great Bri-■•¿Ad, implying that it was not in this country: There is no vestige upon the records of any court to shew, it ever v/as practised iu this'country, prior to 1715. There could not have been then any certain "known mode of conveyance, by which one individual could convey lands to another ;- and this difficulty we may readily suppose was rendered not the less perplexing by die illiterateness of the srst settlers. Ali, or the much greater part of the conveyances which had been made for want oí legal forms and solemnities, must-have been liable to be invalidated. We learn from the act itself, that creditors had sold, or caused to be sold, the lands of their debtors j though there was no law for the sale of a debtor’s land till the 5- G. o. 2>, ch. 7, in the year 17S2. Executors and administrators had sold lands which no law justified $ husbands and wives had sold the lands of their wivest, which was illegal before the act of 17Í 5, c. £8 ; or husbands had sold the lands .of their wives, for 'which there never was any law; and sometimes -patentees knotting of no better mode, had conveyed by endorsement of patents, or by some other similar means j all such conveyances were invalid ; every possessor under such titles was liable to. be ousted. Under such circumstances, the country must- necessarily have been in a state of great inquietude: There existed- two great evils, demanding-the interposition of the legislature — First, the want of a certain established mode of conveyance — Secondly, a confirmation of the titles thus irregularly obtained. The first, they remedied at this session, by the two acts of 1715, ch. 23; entitled, '■'■feme coverts, how to pass lands f and 1715, ch. 38, entitled “ an act to direct the method to be observed in conveying-lands,” Src. The latter they provided for, by the clause now under consideration “-All possessions of, or 41 titles to any lands derived (not which shall be derived) from 4t any sales made, either by creditors- or administrators of any M person deceased ; or by husbands and their wives, or husbands M in right of their wives, or by endorsement of patents or other-44 wise ; of which the purchaser or possessor,, or any claiming 44 under them, have continued or shall- continue in possession ss of the same for seven years, without any suit in law, be and 64 are hereby ratified, confirmed and declared good aad legal to 64 all intents and purposes, whatsoever, against ali and every manner of persons,” &c. Here is not any exception in favor of infants, feme coverts, &c. — When speaking of titles, it mentions them in the perfect tense, “ derived,” equivalent to already derived, because such only were tile titles they intended to ratify; but considering- that some such tides had been derived within seven years next before that session, and would not bo ratified for want of a seven yeais possession, unless provisi-. *90 on were made for them : When they came to gpeak of that, they use both the perfect.and future tense, have continued or shall continue the former relating to title? made more than, or as long as, seven years before ; the latter to titles derived within seven years before, bqt which were equally with the others to be ratified, provided a'seven years possession should be completed, though part of it might be after the act. .They speajt of-them as invalid titles, (though many of them such as those by endorsement of patents and by husbands and wives, came from those who actually had the title and were certainly good unless for want of legal form) shall be ratified and declared good ancl legal .5 importing that they were not so but for the act: Now the Assembly could not mean to ratify and confirm such illegal conveyances if made afterwards ; for in order to prevent the like inconveniences and enquietudes far the future, they at this session, declared how lands shall be convej'ed 5 and moreover that no conveyance shall be good unless acknowledged or proved and registered, Shall all such improved, unacknowledged, and unregistered titles as those mentioned in the second clause, and which are here expressly prohibited, be still continued and still practised and confirmed ? Did they suppose, notwithstanding the act pointing out and ascertaining the legal method of conveyance, that the irregular ones mentioned ip the second clause would s.till be used ? The contrary is certainly evident: They could not have supposed that after this session, the people of this country would so generally disregard the mode prescribed, as to make it expedient before hand, to provide for such irregularities, and therefore the second clause must have been made with u retrospective view. Again ¡ — there is. no exception ip this clause in favour of feme coverts, &c. but the titles here spoken of, are to be confirmed and declared good ar.d legal, against all and al[ manner of persons. The object p.f the legislature, that of quieting the country with respect "to all existing causes of uneasiness, required that, no exception should be made ; for then femes, coverts, infants, and the'heirs of such, might still be a cause of apprehension to great numbers of settlers, and the remedy would be partial and incomplete; whereas they intended an effectual and complete one, one which in three or four years should put all things in quietness j therefore the exception was designedly pmitted out of this clause, and the strong expression “ all and all manner of persons’-51' inserted, though that exception is made in the third clause. Now to try the effect of the second clause; Let it be admitted, that it has, an operation upon future cases $ and suppose a husband has conveyed the land of the y/ife since the act 5 and that the possessor haij continued seven years in peaceable possession ; the wife being alive all the tipie s Will such a possessor have a good right forever, against all and ail manner of persons, the feme covert not expected ; although ;u *91 tbs exception to the third section, her title is saved to her, till after the coverture f Either the possessor will not have a title tinder the second clause, or the feme covert will lose hers, tho’ saved by the fourth ; or the repugnance mast be avoided, by giving to the second clause a retrospective and not a future aspect, in which case the whole is consistent. Again ; Let us suppose that a husband -and wile since the act, have joined in a conveyance of the wife’s land, as directed by 1715, eh. 28 ; would not such conveyance be good without the aid of the act of limitations f and would it not follow, that the legislature were occupied to no purpose, when busied in declaring, that such conveyance should be confirmed, when or after the lands should have been possessed for the space of seven years ? And as such a conveyance bvjlbi e the act, did really stand in need of assistance, aliunde is it not fair t® conclude the clause in question respected such a conveyance made before the act, but not such a one when made after it ? Again, if by this clause the defendant’s title be ratified forever as to future cases, it is a perpetual bar to the plaintiff; and then if it can be shewn as to future cases, that the third clause operates abo as a bar to the plaintiff, it follows that either both clauses are for the same purpose, which cannot be imagined, or that the second regards past transactions, whilst the third and fourth regard future ones 5 and moreover, it will follow that the second, barrs perpetually, when there is possession with co-lour of title ; and the third bars by possession without colour, as the opinion I controvert supposes; that either the second is useless $ for why require colour of title when the next clause dispenses with it altogether, and forms a complete bar without it, producing the very same effects without, as the former docs with it ? Or that the second respects past transactions only. Now then, what say the third and fourth clauses ? No person shall enter or make claim but within seven years, and in default shall be disabled from any claim therefore to be made 1 except feme coverts ike. who have a longer time allowed ; “ but that all such “ possessions, without suing such claim as aforesaid, shall be a perpetual bar, &c.” If a naked possession, as the opinion supposes, under these clauses, will work a bar, is not that bar, however operated, a perpetual one ? And admitting the plaintiff to be perpetually barred, the defendant’s title is perpetually confirmed, and then the third and fourth clauses without any colour of title, operate the same effects precisely, as the second clause with colour of title, and consequently the second was ne= ;er of any use; unless it related to titles before the act % vhich if it did, it was as beneficial and as useful a ¡lause as any in the act." These considerations seem to me to irove, that the second clause has not a prospective view, and hat with regard to it as relating to cases after the act, it is erro-mnus to say a colour of title with seven years, will give a right a fee to the possession? for though a colour of title with sevea *92 years possession, does, as I contend, really have that operation, it is not by reason of any thing contained within the second clause, but arises 1'iom the true construction of the third and fourth clauses. I think it may upon the whole he fairly concluded, that the latter member of iho above distinction, as founded on this clause, is not warranted by it.
And this brings us to the other part of the distinction, namely, that a naked possession for seven years, tolls the right of entry of the plaintiff, and bars his ejectment, but not his writ of right. This is a construction upon the third and fourth clauses ; and I shall endeavor to shew that ic is equally erroneous with the other. In addition to controversies arising from informal conveyances, there were others of a different complexion : Conveyances made or to be made, by persons having no title, though apparently seeming to have one, or being understood to have it, before the extension ef the boundary lines between Carolina and Virginia, lands supposed to lie in Virginia, had been granted by the governors thereof, and had been neglected and deserted by the patentees, and had been again granted by the Lords proprietors ; entries of lands had been made in the land office, and the same lands were afterwards entered by others; patents had been obtained, and the same lands had been afterwards patented tes others ; all this appears in ¡he preamble, and by such means as , another part of the act complains of : Titles had become so perplexed, that no one knew of whom to take or buy lands ; if he purchased from one patentee or grantee under him, an elder might be produced, and he be turned out of possession; — thus it happened as the act also complains, that the dread of elder titles and the expectation of heirs, under dormant deeds and grants, was “likely in a short time to leave much land unpossessed,”, it was necessary to remove these obstacles to population, and to that end to provide some criterion by which a man might know of whom to buy lands, notwithstanding the several conflicting grants or deeds for the same ; and to ensure him of security, notwithstanding there might be unknown prior grants to that under which he purchased ; every instance given, cither in the preamble or body of the act, evinces an intention to settle disputes between claimants under opposite deeds or grants for the same land. Ancient titles to lands granted by the governor of Virginia, were likely to disturb those who had obtained titles here, (for I understand such grants were legalised by compact between the King and Lords proprietors) or the lands have been deserted by the first patentees, and a latter patentee had taken possession ; or former entries or patents threaten the titles of possessions under latter entries or patents ; and proves that the person to be protected by the provisions of the act, was one who had an appearance or colour of title by a subsequent deed or grant, as well as the person to be barred. Such were the evils *93 ío be remedied, and such the design of the legislature and they have applied the remedy in the following words : “ N > person or persons nor their heirs, who heieafn r si..11 have any 66 right or title to any lands, tenements or hereditaments, skill “ thereunto enter or make claim, but within seven years ntxt 46 after his, her or their right or title which shall descend or “ accrue; and in default thereof, such person or persons so not “ enteringor making default, shall be utterly execluded and dis» 4t abled from anv enuy or claim thereafter to be made : If any 46 person that is or shall be entitled to any right or claim of lands, ci tenements or hereditaments, shall be at the time the said right or title first descended or accrued, come or sallen within the ■“ age of twenty-one years, feme covert, non compob mentía, imprisoned or beyond seas, that then such person or persona “ shall and may, notwithstanding ihe said seven years he * xpir-u ed, commence his, her or thtir suit, or make his, her or th> if u entry, as he, she or they might have done before this act; so, as 4t such person or persons shall within three years next after foil 4‘ age,discoverture, coming of sound mind, enlargement outoi pti-4‘ son, or persons beyond seas, within eight years after the title 41 or claim becomes due, take benefit and sue for the sa.ti", and 46 a; no time after the times or limitations herein specified; but 8£ that all possessions held without suing such claim as aforesaid, *s shall be a perpetual bar against all and all manner of persons “ whatsoever, that the expectation of hens may not in a short, 4t time leave much land unpossessed, and titles go perplex* d, u that iio man will know of whom to take or buy lands.” U^oa these clauses, the opinion in the case of Armour and White, admits that an adverse possscssion is necessary, for this is implied in the words “ enter or claims each of which technically signifies a getting the legal possession from one who is actually in possession, either by going upon the land or claiming as near to it as he dare go, for fear of the possessor ; ami is unequivocally expressed in the exception to the third clause, u but that all possessions held without suing such claim as aforesaid,’’ &c. referring to the terms used in the third clause, and signifying the understanding of the legislature to be, that such claims as are spoken of in the third clause, were to be exerted within the limited time against some actual possession ; so far the opinion Is right 5 for it would be abcurd to say a good title shall be barred by not entering within seven years, when no adverse claim cr possession hath been set up. But whence is it inferred that these clauses bar the right of entry only ? The policy of the act was, that settlers should know of whom to purchase with safety; not a temporary title, capable to resist an ejectment only, but a permanent one, capable of encouraging them to clear, cultivate and improve the lands, and such as they might transmit to posterity ; and answerable to this policy, the possession here spuken *94 cf, shill ‘‘utterly exclude and disable” the party cut of possess,;-’ on from any entry or claim thereafter to be made ; and for fear these words were not sufficiently expressive, it is added, that all such possessions shall be a perpetual bar to all persons, &c. It might possibly have been utidei stood from the wording of the former clause, 44 shall be utterly excluded from any entry or claim thereafter to be made,” that the legislature meant only to prevent the entry or the action founded upon a right of possession, leaving the property Or mere right, unaffected ; and t'o obviate such a mistake, they have in the next clause carefully varied the expression, 44 shall be a perpetual bar to all and ail manner of persons not only the claim and entry, hut all'pel - sons shall be barred : Of what ? Not of any particular action or mean of getting possession but geneially and perpetually. — * Again: feme coverts and the like persons “ shall sue” within the time limited for them, “ and at no time afterwards.” Can iri be meant that they shall never sue nor have any action whatsoever afterwards ; and that all others may sue after the time limited for them in a writ of right! When their disabiiities are removed, they stand in the view of reason and justice in the same predicaments as other claimants — certainly m no worse ; they are not more in fault for not suing within the prescribed time than other claimants, yet they shall never bring any action after-wards ; they are excluded from the privilege of suing forever — ' and consequently so also must all others be, unless a sufficient reason can be assigned for placing these favored persons on a ‘ worse footing than others. Supposing this to be law, it were far better for them ; the exception intended to benefit them had not been made — for then after the seven years were expired, they, might still sue a writ of right within sixty years, as the opinion supposes others may : — Since then, the bar formed by these' clauses, is a perpetual bar against all claims, all entries, all persons^ and all suits; it takes horn the plaintiff all remedy, and consequently all title and right, and vests in the defendant necessarily? the absolute dominion forever ; or in the language of the law, an indefeasible fee simple. — And as this accomplishes the object of the legislature, which was to quiet possessions, and to furnish the means of knowing with certainty from whom out of army claimants, co purchase or buy lands with safety j and as-♦bat object would not be accomplished, were the bar only temporary, and the title still liable to be questioned in a writ of right, it seems to me there can be little or no doubt, but that is the true operation of the act, and' of course that it is a mistake to say it bars the right of entry only} that it is a mistake is further confirmed, by considering that there is no instance to be found ia the judicial records of this country, where a writ of right was ever instituted and maintained. Although were it a s-<uad position that the bar is hut temporary, there must have *95 been a great number of occasions rendering the use of that writ essential to the recovery of lands — -the right of possession lo which had been loot, though not the right of property : Autl not a single instance since the year 1715, is strong evidence to prove that it cannot be used j and consequently, that the exposition given by our ancestors, who were cotemporary with the first operations of the act, was, that the clauses in question operated a perpetual bar 5 for upon no other ground can it be accounted for, that the writ-of right was never used, indeed it js not to be accounted for, why the legislature should desire that the plaintiff should be barred of his ejectment, but at the same time be able to recover ia a writ of right. What motive could they have ? How would that have prometed the designs which influenced them in passing the act? Their design was to do away the obstacles which opposed the settlement of the country s These were the uncertainty and the perplexed situation of titles, and the expectation of heirs under former grants.- — Was it pro motive of this design, that the possession introduced by the act should not render the title complete to all purposes, but should leave the possession as much exposed to those heirs and their actions as before ? and those who purchased under such possessions, no more certainty of an indefeasible title than before ? I forbear to say any thing of the nature and form of a writ of right, and of those by whom it is to be used, and of other circumstances incident to it j it is sufficient for my present purpose, to be enabled to discover no substantial reason for preferring a recovery under that writ, to a recovery in the action of ejectment, and until better informed, I shall take the liberty to believe, such a distinction could not have been intended for any purpose, and therefore that it was not intended at all. That a naked possession will operate the bar spoken of in the third and fourth clauses, is as unfounded as the rest of the position. The remarks already made upon the causes of passing the act, shew that it was made to settle disputes between claimants, under different grants for the same lands, and with that only view. This is the very reason why it never extended to the lords proprietors, so as tp bar thern by @ naked possession of their lands s as it would have done, they being equally subjects with the settlers of the country, had it reached the case of disputes, arising upon possessions unaccompanied with deeds or grants, or naked possession. In the times preceding the act, none pretended to hold lands by possessions against a title by a deed or grant; nor was it conceived, that possession could either make or bar a title : how could it when no law existed for that purpose ? The 21 ¶-ac. Í cap. 16, was not in force, nor indeed any statute made after the fourth year of his reign in the year 1607, that being the ;era of the settlement of the country legally authorised and continued : for want of such a property inherent in possession na- *96 turaliy, tbe act was passed to give it that property 5in certain instances, and under certain restrictions. Before this period, n*> disputes were known between claimants by grant, on the one hand, and bare possessions on tbe oflinv The law of those days rendered tbe grantee’s title incomestible, where not opposed by an adverse naked possession ; there was no danger in purchasing from such a grantee on account of the adverse possession, to be dreaded or apprehended : it is impossible in the nature of things* that the act could have for its object, any disputes of that nature, which had not then- been known or heard of, nor were forsecn s the idea of title by naked possession arose after the act, and orí» ginated in a misconception of its meaning ; and has become a, new source of litigation, unknown to former times, and not anticipated by the framers of the act. The claiming of lands by a, naked possession against a title by a deed or grant, which claira-whtnever made is grounded upon the act, and this mistaken-idea has encouraged those having no title, colourable or other*, wise, to settle upon the lands of others, and commit trespasses,, with a view of acquiring a title by a continuation of such trespass for seven years together; and- tbe same mistaken idea, has made men believe, that actions must be instituted against such, trespassers, to prevent the acquisition of title ; and thus an act, which breathes the spirit of peace and quietness, which flowed from the solicitude to prevent law-suits as far as possible, and to remove the causes which perplexed men’s titles, has been made-the disturber of repose, the mother of inquietude, the stirrer up of controversies, and a net to entangle men’s titles. Instead of discountenancing attempts to get lands by unfair means,, without purchasing from the lords proprietors, or from those who have purchased from them ; instead of repressing any practice of settling upon- the lands of an honest purchaser, knowing that the settler commits a trespass iu doing so, and the land belongs to another, and not to himself; it is made to encourage and to cherish such attempts and practices. We may perceive the soundest policy and justice, in protecting the possessions and confirming the titles of those who have paid for their lands, obtained grains and deeds, and settled down upon them, and who have cleared, cultivated and improved them for seven years together, believing them to be their own ; and who in all that time, have received no information from a prior grantee, or those standing in his place, or their better title ; but we can perceive no motive for extending the same protection to a naked possessor or trespasser ; a design of that kind is not to be inferred either from the nature of those controversies which existed prior to she act, the causes which gave birth to the act, ©r from any of the terms employed by it to signify its meaning, when compared- to and explained by other parts ; and therefore there is no ground t.> believe it to have actuated the makers itt any degree ; the *97 less so, ás the immediate consequences of the doctrine, the incompetency of the ejectment} but the competency of the writ of right after the seven years, fabricate an arbitrary distinction, unfounded, when applied to our circumstances, in any principle of convenience, policy, or justice : for with respect to intention, why nüt recover in the ejectment after the seven years as Well as in the writ of right ? Á distinction which has never been recognised by the practice of those who have gone before us, has never been found necessary tobe admitted as a part of our law, prior to the year 1715, till the year 1799, during all which time the landed interests and rights of the people have been satisfactorily secured and protected, without the aid of the writ of right.
innovations In law, like innovations in government, are dangerous experiments ; since the extent of their influence cannot be foreseen. And it is bow rhuch to be doubted, since the act Of 1778, cap. 5, whether, supposing a writ of right to be neees» cessary, it can be deemed a part of the law of this state. From the foregoing remarks, admitting thern to be just, it is to be collected, that the second section of the act oi limitations regards irregular, invalid and informal conveyances made before the act passed $ that the third and fourth sections relate to cases, where several persons have deeds or grants perfect enough in forra for the same tract of land s and some of these persons under deeds or grants of a posterior date, take and continue the possession for a considerable length of time : and that the true meaning and operation of the latter clauses, are to confirm for ■’ die dOo «f ¡d1. such persons. ¡v.«" ho, a colour of title, who " ' - vd.ij ¡m.,': ■■■ion nnc'" rw.-v r-r s-e'.oivv.ars ’ \atfy <.v ¡i; H law, esc. p: ;. gKi.st ¡,- i sons laboring ’O' ‘.r inc.,p'.mies iiaoistkwed in • i. m-bO clause, and as against them also, if they shall not sue within the time limited after such disabilities shall be removed, but not to,create any title de novo, upon the ground of possession or otherwise.